JOHNSON, J.
Claimant appeals from the judgment of the circuit court affirming a Workers’ Compensation Board award of 36.55 degrees (19.04 percent) permanent partial disability for loss of binaural hearing.[1] The referee had awarded 115.20 degrees (60 percent).
Claimant, age 63, worked in the employer’s paper mill for 42 years. He first noticed some loss of hearing 18 years ago. In 1969 he began wearing ear plugs, and during the past few years he worked in the shop area where there is "very little noise.” There is evidence that claimant was exposed to some firearm and mortar fire during World War II, and that he also may suffer from some hereditary loss of hearing.
Workers’ Compensation Board rule, Bulletin No. 122 (April 6, 1976), provides in pertinent part:
"Calculation of Hearing Loss by the Board
"Compensation for hearing loss will be calculated using the frequencies 500, 1000, 2000, 3000, 4000, 6000 Hz. The readings will be averaged. The impairment threshold value of 25 db will be subtracted and the percentage loss converted to degrees. Ratings will be made for either monaural or binaural loss whichever is appropriate.
"Consideration of presbycusis will be on an individual case basis if appropriately presented.”
*[678] The method prescribed in the rule measures the listener’s ability to hear pure tones at the designated frequencies. "Presbycusis” is a medical term denoting the natural degeneration in hearing that occurs with age, varies with the individual and may be influenced by heredity.
Three audiograms administered to claimant were entered into evidence showing his loss of pure tone hearing measured in accordance with the procedures outlined above. The audiograms were adjusted for presbycusis but not on an individual basis. Instead, presbycusis was mathematically calculated using a table published by the National Institute of Occupational Safety and Health (NIOSH). The NIOSH tables are based upon studies of the effects of age on population samples who have not had significant exposure to industrial noise. The three audiograms as adjusted indicated the following: January 29, 1973, 13.74 percent loss of binaural hearing; December 4, 1974, 2.8 percent loss of binaural hearing; April 4, 1975, 19.04 percent loss of binaural hearing.
The referee based her finding of 60 percent hearing loss primarily on testimony of claimant’s doctor, an eye, ear and nose specialist, concerning defendant’s loss of speech discrimination rather than the audio-grams that measure pure tone testing. The Board concluded:
"The Board, on de novo review, disagrees with the Referee’s basis for increasing the award. WCB Bulletin No. 122 is applicable in this case and the award must be calculated using frequencies of 500, 1000, 2000, 3000, 4000 and 6000 Hz; the readings must be averaged and the formula set forth in ORS 656.214(2)(g) must be applied. The Referee failed to do this and relied solely on Dr. Hodgson’s testimony.
"The added factor of presbycusis will be considered on an individual basis if appropriately presented. The Referee failed to take this factor into consideration although it was presented at hearing. The Board believes that significant decibel correction values do exist for *[679] persons in the sixty plus age category, therefore, correction values for presbycusis should have been considered.
"The Board concludes that the audiogram of April 4, 1975, which used the formula set forth in ORS 656.214(2)(g) and also took into consideration the presbycucis factor most accurately presents the actual binaural hearing loss suffered by claimant. This audio-gram indicates claimant’s binaural hearing loss to be 19.04% equal to 36.55 degrees. The award of the Referee is modified accordingly.”
Petitioner contends that WCB Bulletin No. 122 exceeds the Board’s rule making authority because it does not allow consideration of evidence of loss of ability to hear and understand the spoken word, i.e. speech discrimination, and that it was improper to use the NIOSH tables in measuring presbycusis. We do not reach the question of the validity of WCB Bulletin No. 122 because on de novo review of the record we are convinced the Board’s award must be affirmed. Our conclusion is premised on the following:
1. The Audiograms. The Board made its award on the basis of the latest and highest audiogram. The only medical evidence, other than the audiograms submitted by another physician, was the testimony of claimant’s doctor. On cross examination he agreed with the proposition that "occupational deafness does not seem to progress when noise exposure stops, where presbycusis generally progresses, though very slowly.” The Board ignored the earlier audiograms, although it is undisputed that claimant has worked in a quiet atmosphere for the past few years commencing before the date of the first audiogram.
2. NIOSH Tables. Claimant contends that it was wrong for the Board to rely on the NIOSH tables in estimating the effect of presbycusis. Claimant does not contend that presbycusis is not a relevant factor in causing hearing loss. There is no evidence that the tables are unreliable except that they only reflect the hearing loss that an average person would suffer because of presbycusis. It is clear from the Board’s *[680] opinion that it would have considered evidence relating specifically to claimant "if appropriately presented.” In the absence of such evidence we concur with the Board’s reliance on these tables.
There was some evidence of presbycusis relating specifically to claimant, but the Board apparently concluded and we agree that the evidence was not persuasive. If that evidence relating to claimant had been considered, the only rational conclusion would be that claimant suffered a greater loss of hearing from presbycusis than the average because of heredity. Likewise we concur with the Board in not considering the World War II exposure to firearm and mortar fire as having any significant effect on claimant’s hearing.
3. Speech Discrimination. Claimant’s doctor testified that in his opinion audiograms do not adequately measure loss of hearing because they test only for ability to hear pure tones and not the spoken word. He then explained speech discrimination tests that were administered to claimant and how these tests are evaluated. According to him, evaluation requires a subjective clinical judgment by the examining physician. It is not clear from the record whether the doctor ever testified what his clinical judgment was. During cross examination he spoke in terms of a "75 percent disability.” This was not a clinical judgment, but a legal opinion. Viewing his testimony most favorably to claimant, the doctor opined that claimant suffered a 75 percent loss in normal speech discrimination when wide band noise of 70 decibels was introduced. Seventy decibels is apparently equivalent to the noise of most manufacturing plants.
The doctor specifically testified that his tests indicated that at lower decibel levels, i.e. in a quiet atmosphere, claimant’s speech discrimination ability was normal. At 70 decibels he could only understand 4 percent of the words as compared to 40 percent for a normal person. He further testified that when claimant was examined in a manner that he could see the *[681] speaker and thus lip read, he was able to understand 50 percent of the words spoken. We are unconvinced that the doctor’s opinion indicates any greater degree of hearing loss than the audiograms which average the ability to hear pure tones at various sound levels.
Affirmed.

ORS 656.214(2)(f) and (g) provide:
"(2) As used in this section:
"(f) For partial or complete loss of hearing in one ear, that percentage of 60 degrees which the loss bears to normal monaural hearing.
"(g) For partial or complete loss of hearing in both ears, that proportion of 192 degrees which the combined binaural hearing loss bears to normal combined binaural hearing. For the purpose of this paragraph, combined binaural hearing loss shall be calculated by taking seven times the hearing loss in the less damaged ear plus the hearing loss in the more damaged ear and dividing that amount by eight. In the case of individuals with compensable hearing loss involving both ears, either the method of calculation for monaural hearing loss or that for combined binaural hearing loss shall be used, depending upon which allows the greater award of disability.”